In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00115-CR
______________________________


JEREMY RAY BROWN, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 8th Judicial District Court
Franklin County, Texas
Trial Court No. 7683


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Jeremy Ray Brown appeals from his conviction by a jury for aggravated sexual assault of a
child. Brown was also convicted on two other counts of aggravated sexual assault of a child. The
jury assessed seventeen years' imprisonment on each count. The convictions were appealed
separately, but have been briefed together.
Â Â Â Â Â Â Â Â Â Â Â Â Since the briefs and arguments raised therein are identical in all three appeals, for the reasons
stated in Brown v. State, cause number 06-04-00113-CR, we likewise resolve the issues in this
appeal in favor of Brown. 
Â Â Â Â Â Â Â Â Â Â Â Â We reverse the judgment and remand to the trial court for a new trial.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â February 23, 2006
Date Decided:Â Â Â Â Â Â Â Â Â March 29, 2006

Do Not Publish
Â 




pinion makes it clear that a mere statement in the order that the
court heard the evidence is insufficient to show that an evidentiary hearing occurred; thus, we must
apply the presumption that the pretrial hearing was nonevidentiary and that the court considered only
the evidence filed with the clerk. The lack of a reporter's record is not a consideration in this
situation.

 The second matter is the absence of findings of fact and conclusions of law. Davis complains
because the court did not file findings of fact and conclusions of law despite his request. "Texas
Rules of Civil Procedure 296 and 297 do not impose any duty on the trial court to file findings of
fact and conclusions of law where there has been no trial, such as a special appearance that is subject
to interlocutory appeal." Niehaus v. Cedar Bridge, Inc., 208 S.W.3d 575, 579 n.5 (Tex.
App.--Austin 2006, no pet.) (quoting Bruno's, Inc. v. Arty Imps., Inc., 119 S.W.3d 893, 897 n.2
(Tex. App.--Dallas 2003, no pet.)); see Tex. R. App. P. 28.1. Thus, no intrinsic error has been
shown by the trial court's failure to file findings and conclusions.

Jurisdictional Requirements

 Stuckey alleges that, since he is a nonresident of Texas, the County Court at Law for Bowie
County does not have jurisdiction. A claim of special appearance under Tex. R. Civ. P. 120a is the
procedural method used to avoid the jurisdiction of Texas courts as authorized under the Texas
long-arm statute. The statute allows Texas courts jurisdiction over nonresident defendants doing
business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). While the
long-arm statute does enumerate certain examples of doing business, it does not provide an exclusive
list. Id. ("In addition to other acts that may constitute doing business, a nonresident does business
in this state if . . . ," then setting out three acts); see also BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Schlobohm v. Schapiro, 784 S.W.2d 355, 256-57 (Tex. 1990). 
The statute is construed as extending Texas courts' jurisdiction over nonresident defendants as far
as the federal constitutional requirement of due process permits. Marchand, 83 S.W.3d at 795. 

 For a Texas court to exercise personal jurisdiction over a nonresident, two conditions must
be met: the Texas long-arm statute must authorize it, and it must be consistent with the due-process
guarantees provided in our federal and state constitutions. Schlobohm, 784 S.W.2d at 356; Ennis
v. Loiseau, 164 S.W.3d 698, 706 (Tex. App.--Austin 2005, no pet.). Under the Due Process Clause
of the Fourteenth Amendment, jurisdiction is proper if a nonresident established "minimum contacts"
with Texas and maintenance of the suit does not offend traditional notions of fair play and
substantial justice. Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002). 

 The fundamental purpose of the minimum-contacts analysis has been to protect the
nonresident defendant from the unfair and unforeseen assertion of jurisdiction. See World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). This requires a determination of whether
the nonresident defendant has purposely availed itself of the privilege of conducting activities within
the forum state to invoke the benefits and protection of its laws. Burger King Corp. v. Rudzewicz,
471 U.S. 462, 474-75 (1985). The "purposeful availment" requirement guarantees that a nonresident
defendant will not be compelled to defend a suit in a jurisdiction based solely on random, fortuitous,
or attenuated contacts or the unilateral activity of another party or a third person. Id. at 475-76; see
also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984); Nikolai v. State,
922 S.W.2d 229, 234 (Tex. App.--Fort Worth 1996, writ denied).

 Nonresident defendants must have fair warning that particular activities may subject them
to a foreign sovereign's jurisdiction. Rudzewicz, 471 U.S. at 474-75. A nonresident defendant must
therefore perform some overt act to subject himself or herself to the possibility of being compelled
to defend a suit in a foreign court. Tuscano v. Osterberg, 82 S.W.3d 457, 466 (Tex. App.--El Paso
2002, no pet.). This "fair warning" requirement is satisfied if the defendant has "purposefully
directed" his or her activities at residents of the forum and the litigation results from alleged injuries
that "arise out of or relate to" those activities. Rudzewicz, 471 U.S. at 472; Tuscano, 82 S.W.3d at
466.

Standards of Review

 Whether a trial court has personal jurisdiction over a defendant is a question of law. 
Marchand, 83 S.W.3d at 793. The plaintiff bears the initial burden of pleading sufficient allegations
to bring a nonresident defendant within the provisions of the long-arm statute, while the defendant
challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. Id. 
"Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either
specific jurisdiction or general jurisdiction." Id. at 795. 

 We may review the trial court's resolution of disputed fact issues for legal and factual
sufficiency under the same standards of review that we apply in reviewing a jury verdict. 
TravelJungle v. Am. Airlines, Inc., No. 2-06-178-CV, 2006 WL 3627202 (Tex. App.--Fort Worth
Dec. 14, 2006, no pet. h.); Michel v. Rocket Eng'g Corp., 45 S.W.3d 658, 668 (Tex. App.--Fort
Worth 2001, no pet.).

Personal Jurisdiction

 There are two variations within the bounds of personal jurisdiction. Personal jurisdiction
exists if the nonresident defendant's minimum contacts give rise to either specific or general
jurisdiction. Marchand, 83 S.W.3d at 795; Schexnayder v. Daniels, 187 S.W.3d 238, 243 (Tex.
App.--Texarkana 2006, pet. dism'd w.o.j.). 

 General jurisdiction exists when the defendant's contacts with Texas "are continuous and
systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause
of action did not arise from or relate to activities conducted within the forum state." Marchand, 83
S.W.3d at 796. This is described as being a more demanding minimum-contacts analysis than
specific jurisdiction. Coleman, 83 S.W.3d at 807. Thus, general jurisdiction allows a forum to
exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a
defendant's contacts with the forum. Id. at 806-07; Guardian Royal Exch. Assurance, Ltd. v. English
China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991). Those contacts should be such as to justify
categorizing the defendant as a resident of this State. Schexnayder, 187 S.W.3d at 243. 

 Specific jurisdiction exists when the defendant's liability arises from or is related to an
activity conducted within the forum. Marchand, 83 S.W.3d at 796 (citing Guardian Royal Exch.,
815 S.W.2d at 228). For a court to exercise specific jurisdiction over a nonresident defendant, two
requirements must be met: (1) the defendant's contacts with the forum must be purposeful; and (2)
the cause of action must arise from or relate to those contacts. Coleman, 83 S.W.3d at 806.

 Specific jurisdiction exists when the defendant's alleged liability "arises from or is related
to an activity conducted within the forum." Marchand, 83 S.W.3d at 796. In other words, the cause
of action must arise from, or relate to, the defendant's purposeful contacts. Schexnayder, 187 S.W.3d
at 243.

The Evidence

 The pleadings agree on a number of points, and do not contest several others. Stuckey is not
now--and never has been--a resident of Texas. His connection with Texas exists solely because
of his appointment as executor of the estate of Emogene--and because of the actions which he
undertook as executor. Those actions included applying for probate of the will, qualifying as
independent executor, filing the required appraisement and list of claims, and collecting funds from
bank accounts in Texas and moving the money to Georgia banks (from which some unknown portion
of the funds was divided and presumably delivered to some of Emogene's beneficiaries). Texas
Probate Code Section 78 disqualifies a nonresident from serving as an executor unless he or she
appoints a resident agent to accept service of process in all actions or proceedings with respect to the
estate. Tex. Prob. Code Ann. Â§ 78 (Vernon 2003). Such appointment must be filed with the court. 
Stuckey originally retained local counsel to represent him and to act as that agent. (2) Stuckey
acknowledges in his brief that he came to Texas six times during the course of the ongoing probate
proceeding and that he mustered and moved the assets to Georgia. The action filed against him in
the probate proceeding contended that he violated specific statutory requirements under Texas law
and that his actions constituted breach of fiduciary duty, negligence, and conversion. 

 In their original petition, the Sewells alleged Stuckey had appointed Bill Hannon of Atlanta,
Texas, as his agent for service of process. The applicable statute requires such an appointment
concerning "all actions or proceedings with respect to the estate." Tex. Prob. Code Ann. Â§ 78(c). 
We do not have a full clerk's record of all proceedings, including the return of citation, but the record
shows that, after the pleading was filed against Stuckey, faxed copies of such documents were
transmitted between Hannon and Stuckey. A hearing was set by the Bowie County Court at Law for
April 20, 2004, on the motion for an injunction, but on April 5, 2004, attorneys in Georgia acting
on Stuckey's behalf removed the case to federal court where it remained for several months. Texas
law requires the appointment of an agent for the very purpose of responding to matters relating to
the estate which is being administered by the nonresident. Some courts have held that the
designation of an agent for process is sufficient to grant consent to be sued in that jurisdiction and
therefore confers personal jurisdiction on the courts of that state. See Sondergard v. Miles, Inc., 985
F.2d 1389, 1396 (8th Cir. 1993); Ocepek v. Corporate Transport, Inc., 950 F.2d 556 (8th Cir. 1991);
Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199-1200 (8th Cir. 1990). We acknowledge
that other Texas courts of appeals have come to an opposite conclusion. See Conner v.
ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 417 (Tex. App.--Houston [14th Dist.] 1997, no
writ); Juarez v. United Parcel Serv. de Mexico S.A. de C.V., 933 S.W.2d 281, 285 (Tex.
App.--Corpus Christi 1996, no writ). Since this issue is not squarely before us, we will not address
whether Stuckey's designation of an agent for service in Texas and the service of that agent in Texas
alone is sufficient to confer jurisdiction in Texas courts. At the least, this is an important factor to
consider when determining if the nonresident has sufficient contacts with the State of Texas to
confer jurisdiction on Texas courts. The United States Supreme Court has reaffirmed that serving
a nonresident in the state of the forum alone satisfies the due-process requirements. See Burnham
v. Superior Court of Cal., 495 U.S. 604 (1990) (in-state service of process on nonresident is
consistent with due process); Stallworth v. Stallworth, 201 S.W.3d 338 (Tex. App.--Dallas 2006,
no pet.).

Specific Jurisdiction

 The question is: Do Stuckey's actions constitute sufficient contacts to authorize specific
jurisdiction in Texas courts? We conclude that it does. Stuckey petitioned the Texas court to be
recognized as the independent executor of the estate and made several trips to Texas in carrying out
those duties. By invoking the authority of the Texas court as executor of the estate, Stuckey took
assets from institutions in Texas and distributed some of those assets. Additionally on his
appointment, Stuckey named an agent in Texas to accept citation in accordance with Texas law. We
believe these actions are sufficient to establish the required minimum contacts with Texas to
authorize Texas to assert jurisdiction. In a similar situation, the Austin Court of Appeals found an
out-of-state executor subject to personal jurisdiction in Texas because she took control of property
within the State. Smith v. Lanier, 998 S.W.2d 324 (Tex. App.--Austin 1999, pet. denied). 

 There is also authority that voluntarily filing a lawsuit in a jurisdiction is a purposeful
availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another
lawsuit when the lawsuits arise from the same general transaction. Primera Vista S.P.R. de R.L. v.
Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin, 974 S.W.2d 918, 926
(Tex. App.--El Paso 1998, no pet.). (3)

 All of the claims involved here are directly related to Stuckey's actions as executor of the
estate of a resident of Texas. Thus, under either theory, specific jurisdiction exists, and Stuckey has
made himself subject to personal jurisdiction within this State. 

General Jurisdiction

 In light of our determination that Stuckey is subject to the Texas court under the concept of
specific jurisdiction for this action, we need not reach the question of whether the court would have
general jurisdiction under these facts.

Alternative Arguments

 Stuckey also argues that it is unfair to subject him to suit in Texas because of the "home court
advantage." He argues that "the non-resident defendant almost always earns the contempt of the
court and leaves plaintiff's counsel firmly in the drivers' seat - which is exactly what happen [sic]
in this case." He argues this is shown most clearly by the court's findings that his special appearance
was "groundless and brought in bad faith, brought for the purpose of harassment and delay and other
improper purposes." 

 Stuckey has seized on "death trap" language in a footnote in W & F Transp., Inc. v. Wilhelm,
208 S.W.3d 32, 41 (Tex. App.--Houston [14th Dist.] 2006, no pet.), declaring that the "Wilhelm
Rule" explains the difficulties that a party faces in pursuing a special appearance under Texas
procedural rules and justifies his or her failure to take any act to attempt to support his or her
position. The footnote reads: 

 This speculative possibility was implicitly rejected in Holten [168 S.W.3d 777]. A
special appearance like that in Holten is fraught with procedural death traps, and
counsel is much more likely to waive his client's jurisdictional challenge than is
counsel likely to invite error during closing argument at the end of trial.

Wilhelm, 208 S.W.3d at 41 n.8.

 We are unpersuaded by the footnote. The same court has also recently recognized that
special appearance claims are not so easily waived as might be thought from an unqualified reading
of the Wilhelm footnote. See Huynh v. Nguyen, 180 S.W.3d 608, 617 (Tex. App.--Houston [14th
Dist.] 2005, no pet.). A finding of waiver has been reversed by the Texas Supreme Court recently
in Exito Elecs. Co. v. Trejo, 142 S.W.3d 302, 308 (Tex. 2004). Similarly, waiver has been found
not to exist in a number of other scenarios in which counsel took other action than pursuing the
special appearance solo. See In re M.G.M., 163 S.W.3d 191, 201 (Tex. App.--Beaumont 2005, no
pet.); Brittingham-Sada de Powers v. Ancillary Estate of Brittingham-McLean, 158 S.W.3d 518, 523
(Tex. App.--San Antonio 2004, no pet.). Although procedural requirements exist, they are not
unreasonable. 

 Further, although Stuckey states in his brief that the special appearance rule is per se
unconstitutional because of the psychological bias against an out-of-state party as combined with
"unduly strict requirements" and "procedural traps," he specifies no particular requirement that is
overly strict, does not discuss the rule in any depth, and does not attempt to apply constitutional
analysis to the application of the rule. (4)
 We thus decline to address those contentions.

 Stuckey argues he was terminally wronged because the County Court at Law did not
promptly rule on his special appearance after he filed it. That is not entirely accurate. He filed a
removal to federal court--of a state probate proceeding--to Georgia. The Georgia federal court, in
due course, sent it to the Eastern District of Texas federal court, which in due course returned it to
the original Bowie County Court at Law from which he had removed it. This resulted in seventeen
months' delay, undoubtedly additional attorney's fees, and no progress toward a conclusion. Before
the most recent proceeding, the estate has remained open for six years, with one individual,
Emogene's husband, attempting to recover monies he believed were at least partially his. Rather than
resolving the matter, the record suggests that other interests became central to the proceeding. 
Whether those interests and Stuckey's actions can be proven to be improper and actionable is a
matter not before this Court in this appeal. At this point, we decide only whether Stuckey, by
accepting the mantle of executor, submitted himself to the jurisdiction of Texas courts. We also note
that jurisdiction and ultimate liability are two different considerations--it is possible for an entity
to be subject to jurisdiction, yet not ultimately liable under other theories of law. See Lanier, 998
S.W.2d at 334.

Fair Play and Substantial Justice

 Stuckey also argues that the constitutional requirements have been violated by the ruling. 
Even if Stuckey has the minimum contacts to authorize Texas courts to assert jurisdiction, we must
also determine whether the assertion of such jurisdiction comports with fair play and substantial
justice. Guardian Royal Exch., 815 S.W.2d at 232. We will consider the appropriate factors:

 (1) The burden on the defendant. We find the burden on Stuckey is slight. When the
nonresident purposefully establishes the minimum contacts required, it is rare that the exercise of
jurisdiction by the forum state would not comply with fair play and substantial justice. Id. at 231. 
Nor is distance alone ordinarily sufficient to defeat jurisdiction. Id.

 (2) The interests of the forum state in adjudicating the dispute. This dispute arises from a
decedent's estate filed and administered in the State of Texas. The deceased was a resident of Texas,
most of the property was located in Texas, and one of the beneficiaries is a charitable organization
in Texas. The issues involve the application of Texas probate law. We believe it is generally
preferable to allow the forum court to adjudicate its own laws. 

 (3) The plaintiffs' interest in obtaining convenient and efficient relief. Undoubtedly the local
Texas court would be more efficient for the plaintiffs, residents of Texas. 

 The final two factors:

 (4) The interstate judicial system's interest in obtaining the most efficient resolution of
controversies, and 

 (5) The shared interests of the several states in furthering fundamental substantive social
policies are not applicable in this case.

 This case is factually very similar to Lanier, 998 S.W.2d at 334. As in Lanier, Stuckey took
advantage of the laws of the State of Texas to exercise control over the decedent's assets. He
purposefully directed his activities toward numerous Texas residents and institutions, activities that
resulted in the removal from the State of the property that is the basis of the dispute. Further, the
property was clearly subject to the jurisdiction of the Texas probate court. Under these
circumstances, and for the reasons previously set out in our discussion of specific jurisdiction, we
conclude that the assertion of personal jurisdiction over Stuckey does not offend traditional notions
of fair play and substantial justice. We, therefore, find that sufficient evidence exists in the record
to support the exercise of personal jurisdiction over Stuckey, both in his individual capacity and as
executor. 

Counterpoint--Frivolous Appeal 

 By counterpoint, the Sewells contend the appeal is frivolous and request this Court to award
attorney's fees and costs as damages. See Tex. R. App. P. 45. In deciding if an appeal is frivolous,
this Court has previously held that the issue is whether the appellant had a reasonable expectation
of reversal or whether he or she merely pursued the appeal in bad faith. An appellant's right of
review will not be penalized unless there is a clear showing that he or she had no reasonable ground
to believe that the judgment would be reversed. In re Marriage of Long, 946 S.W.2d 97, 99 (Tex.
App.--Texarkana 1997, no writ) (citing Long Trusts v. Atl. Richfield Co., 893 S.W.2d 686, 689
(Tex. App.--Texarkana 1995, no writ)). Even if the argument on appeal fails, if it has a reasonable
basis in law and constituted an informed, good-faith challenge to the trial court's judgment, it should
not be considered as a frivolous appeal. Long, 946 S.W.2d at 99. After analyzing the facts of this
appeal based on that standard, we deny the counterpoint. 

 We affirm the order denying the special appearance.


 Jack Carter

 Justice


Date Submitted: February 7, 2007

Date Decided: February 27, 2007

1. Because Emogene and Norris share a common last name, we will refer to each by his or her
first name to avoid confusion.
2. We note that Stuckey (an attorney licensed in Georgia) retained, then fired, at least two
Texas attorneys, and is now acting pro se.
3. See Zamarron v. Shinko Wire Co., 125 S.W.3d 132, 143 (Tex. App.--Houston [14th Dist.]
2003, pet. denied); Tuscano, 82 S.W.3d at 467. 

4. See Tex. R. App. P. 38.1(h); Stephens v. Dolcefino, 126 S.W.3d 120, 130 (Tex.
App.--Houston [1st Dist.] 2003), writ denied, 181 S.W.3d 741 (Tex. 2005).