Affirmed as Modified and Opinion filed June 3, 2010

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-00826-CV



 

Hector Canales Rodriguez
d/b/a Cowboy Transport, Appellant

V.

Jose Villarreal, Appellee

 



On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 2006-71327



 

OPINION

Hector Canales Rodriguez d/b/a Cowboy
Transport appeals the portion of a judgment awarding exemplary damages to
appellee, Jose Villarreal.  In two issues, Rodriguez contends the trial court erred
by failing to apply the statutory exemplary-damages cap when rendering judgment
on the jury’s verdict.  Villarreal has filed a motion to dismiss the appeal and
award sanctions, contending Rodriguez waived his right to appeal.  We ordered
the motion taken with the case.  Because we agree the trial court erred by
failing to apply the statutory exemplary-damages cap, we modify the judgment
and affirm as modified.  Because we conclude Rodriguez did not waive his right
to pursue this appeal, we deny Villarreal’s motion to dismiss and for sanctions.

I.                  
Background

Villarreal sued Rodriguez for
injuries sustained in a vehicle accident.  During trial, the parties entered
into what they characterized as a “high/low agreement.”  They orally announced the
agreement on the record as follows.

 

THE COURT: Are we ready to go forward or - - 

 

[RODRIGUEZ’S COUNSEL]:   We need to make a record. 
Judge, defense counsel and [Villarreal’s] counsel would like to announce an
agreement of a high/low agreement in this case - - 

 

THE COURT: Okay.

 

[RODRIGUEZ’S COUNSEL]:    - - with the guaranteed
recovery of  [Villarreal] a minimal of a hundred thousand, maximum of 750,000. 
We will proceed forward and let the jury render a verdict and if the verdict
comes in between 100 and 750, it will be the verdict.

 

[VILLARREAL’S COUNSEL]:  We agree each party waives
right to appeal.

 

[RODRIGUEZ’S COUNSEL]: Fine, yes.  So agreed.

 

THE COURT: Okay.  I am not - - and so if the jury
returns a verdict that is within your high/low, that’s the verdict?

 

[VILLARREAL’S COUNSEL]: Right.

 

THE COURT: If it is outside on either side, your
high/low agreement controls; is that right?

 

[RODRIGUEZ’S COUNSEL]: Correct.  Correct. It’s a Rule
11 agreement for maximum and minimum.

 

THE COURT: Okay.  All right.  Okay.[1]

 

A jury found that Rodriguez’s
negligence proximately caused the accident and assessed $112,109 in
compensatory damages, which consisted of $108,109 in economic damages and
$4,000 in non-economic damages.  The jury also found that Rodriguez was grossly
negligent and assessed $550,000 in exemplary damages. 

Subsequently, Villarreal filed a “Motion
to Enforce Rule 11 Settlement Agreement and for Attorney’s Fees and Sanctions,”
and both parties filed a motion for judgment.  In essence, Villarreal asserted
that the parties’ agreement required rendition of judgment for the full amount
of compensatory and exemplary damages assessed by the jury.  In contrast,
Rodriguez argued that the agreement did not preclude application of the
statutory exemplary-damages cap, which would mandate judgment for $220,218 in
exemplary damages, as opposed to the $550,000 assessed by the jury.  See
Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b) (Vernon Supp. 2009)
(“Exemplary damages awarded against a defendant may not exceed an amount equal
to the greater of: (1)(A) two times the amount of economic damages;  plus (B)
an amount equal to any noneconomic damages found by the jury, not to exceed
$750,000;  or (2) $200,000”).

On June 3, 2008, the trial court
signed a judgment, reflecting the court interpreted the agreement as asserted
by Villarreal and awarding him $112,109 in compensatory damages, $550,000 in
exemplary damages, costs of court, and pre-judgment and post-judgment
interest.  Rodriguez timely filed a motion to modify the judgment, re-urging
his contention that the exemplary-damages cap must be applied.  The trial court
denied the motion by written order.  

II.              
Analysis

In his first issue, Rodriguez
advances two somewhat interrelated reasons that the trial court erred by failing
to apply the statutory exemplary-damages cap: (1) the high-low agreement was
inapplicable because the conditions precedent were not triggered; or (2) even
if the high-low agreement were applicable, the trial court incorrectly
interpreted it.  Rodriguez’s second issue is an alternative contention; he
argues that, even if the high-low agreement were applicable, the trial court
erred by refusing to apply the exemplary-damages cap because it can be waived
only by express agreement.  Villarreal contends that, not only did the trial
court correctly interpret the parties’ agreement and refuse to apply the
exemplary-damages cap, but Rodriguez waived his right to appeal the trial
court’s judgment.  Therefore, Villarreal requests that we dismiss the appeal
and assess sanctions against Rodriguez. 

A.        The Parties’ Agreement

With respect to his first issue, Rodriguez
contends the high-low agreement would be triggered only if the verdict fell
outside its limits; i.e., if the verdict were less than $100,000, Villarreal was
entitled to recover $100,000, and if the verdict were greater than $750,000, Villarreal’s
recovery was limited to $750,000.  Rodriguez contends the high-low agreement
was inapplicable if a verdict fell between these amounts; thus the trial court
was required to render judgment on the verdict by applying all legal concepts,
including the exemplary-damages cap, that are ordinarily applicable when
rendering judgment on a jury verdict. 

A “ high–low agreement” is “[a]
settlement in which a defendant agrees to pay the plaintiff a minimum recovery
in return for the plaintiff’s agreement to accept a maximum amount regardless
of the outcome of the trial.”  Black’s
Law Dictionary 746 (8th ed. 2004); see Baylor Coll. of Med. v.
Camberg, 247 S.W.3d 342, 344 n.1 (Tex. App.—Houston [14th Dist] 2008, pet.
denied) (citing above Black’s Law Dictionary definition).  A settlement
agreement, including a high-low agreement, is a contract, and its construction
is governed by legal principles applicable to contracts generally.  Employers
Reinsurance Corp. v. Gordon, 209 S.W.3d 913, 917 (Tex. App.—Texarkana 2006,
no pet.); ASI Techs., Inc, v. Johnson Equip. Co., 75 S.W.3d 545,
547 (Tex. App.—San Antonio 2002, pet. denied).  If a contract is worded so that it
can be given a certain or definite legal meaning or interpretation, it is not
ambiguous, and we construe it as a matter of law.  See Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).

Initially, we agree with Rodriguez’s
contention that the high-low agreement was never triggered.  The parties’
recitations, particularly the following response to the trial court’s question,
made clear that the high-low agreement controlled only if the verdict fell
outside its limits:

THE COURT: If it is outside on either side, your
high/low agreement controls; is that right?

 

[RODRIGUEZ’S COUNSEL]: Correct.  Correct. It’s a Rule
11 agreement for maximum and minimum. 

 

Moreover, as a sister-state court
recognized in a case cited by Rodriguez,

A high-low agreement, when initially reached by the
parties in a litigation, is, in fact, a conditional settlement.  The condition of the agreement is that the jury render
a verdict that falls outside the range of the high-low agreement. When a
verdict is rendered outside of the agreed-upon range, the condition is triggered and the “high”
or the “low” becomes binding upon the parties as a settlement.  By contrast,
when a jury renders a verdict within the range of the high-low agreement, the
condition is not met and the high-low agreement is rendered academic.

 

Cunha v. Shapiro, 837 N.Y.S.2d 160, 163 (N.Y.
App. Div. 2007) (emphasis added).  

Villarreal frames his contention as
an argument that the high-low agreement applied even if the verdict fell between
$100,000 and $750,000 and Rodriguez agreed to pay the amount of any such
verdict.  However, the high-low agreement was clearly inapplicable to a verdict
between its dollar limits considering the nature and purpose of such an
agreement.  See id.; Black’s
Law Dictionary 746.  Nevertheless, Villarreal repeatedly suggests that
the parties reached a “settlement agreement” for payment of such a verdict. 
Consequently, the dispute is actually whether the parties’ overall Rule 11
agreement contained not only a high-low agreement but also an agreement that
Rodriguez would pay the amount of any verdict between $100,000 and $750,000. 

We disagree that the parties made an
agreement that Rodriguez would pay the amount of any verdict between $100,000
and $750,000.  The parties represented at both the outset and conclusion of
their announcement that they were dictating a “high-low” agreement.  They did not
represent that they made any sort of compromise settlement relative to a
verdict between the limits of the high-low agreement.  The only language in
their announcement relative to such a verdict was the following: 

[RODRIGUEZ’S COUNSEL]:    - - with the guaranteed
recovery of  [Villarreal] a minimal of a hundred thousand, maximum of 750,000. 
We will proceed forward and let the jury render a verdict and if the verdict
comes in between 100 and 750, it will be the verdict.

. . . 

 

THE COURT: Okay.  I am not - - and so if the jury
returns a verdict that is within your high/low, that’s the verdict?

 

[VILLARREAL’S COUNSEL]: Right.

 

(emphasis
added).

 

In his brief, Villarreal summarizes
the above-cited statement by Rodriguez’s counsel as follows:  “[W]e will
proceed forward and let the jury render a verdict and if the verdict comes in
between 100 and 750, it [the guaranteed recovery] will be the verdict.” 
Therefore, Villarreal contends that the word “it” in Rodriguez’s counsel’s
statement referred to “the guaranteed recovery,” reflecting the parties agreed
that the guaranteed recovery would be the amount of the verdict.  We disagree. 
The only noun preceding “it” in this statement, to which “it” could have
referred, was the word “verdict.”  Accordingly, the parties merely stated that
the verdict will be just that—“the verdict.”

Further, the trial court’s above-cited
question and the answer thereto confirmed the parties did not agree that “the
guaranteed recovery” will be “the verdict.”   When the trial court asked, “a
verdict that is within your high/low, that’s the verdict?,” Villarreal’s
counsel acquiesced in the trial court’s summary and did not impose language
ensuring “the guaranteed recovery” will be the amount of the verdict.  We are
not authorized to rewrite agreements to insert provisions parties could have
included or to imply restraints for which they have not bargained.  See Tenneco, Inc. v. Enter. Prods. Co.,
925 S.W.2d 640, 646 (Tex. 1996).

Moreover, as Rodriguez asserts, the
parties did not state that a verdict between $100,000 and $750,000 will be “the
amount Rodriguez will pay,” “the judgment,” “the recovery,” or similar words to
that effect.  Villarreal offers no authority demonstrating a defendant’s
agreement that a certain amount constitutes a “verdict” translates into the
defendant’s “guarantee” to pay that amount to the plaintiff.   To the contrary,
the term “verdict” does not entail a guarantee that a party will recover the
amount of damages found by the jury.  A “verdict” is “a written declaration by
a jury of its decision, comprehending the whole or all the issues submitted to
the jury . . . .”  Tex. R. Civ. P. 290.  Although a trial court must generally render
judgment on a verdict, Tex. R. Civ. P. 300, the judgment “shall be so framed as
to give the party all the relief to which he may be entitled either in law
or equity.”  Tex. R. Civ. P. 301 (emphasis added); see Black’s Law
Dictionary 858 (8th ed.
2004) (defining “judgment” as a “court’s final determination of the rights and
obligations of the parties in a case.”).  

Consistent with this requirement, there
are various legal principles, in addition to the exemplary-damages cap, that
may apply when a trial court renders judgment on a verdict and cause the
ultimate recovery to be less, or even more, than the total damages found by the
jury.  See, e.g., Tex. Civ. Prac. & Rem. Code Ann. § 33.012(a)
(Vernon 2008) (providing that, relative to certain causes of action, trial court
shall reduce amount of damages to be recovered by claimant by a percentage
equal to his percentage of responsibility); id. § 33.012(b) (requiring
trial court, when this provision is applicable, to reduce claimant’s recovery
of damages by sum of all his settlements in the cause of action); Tex. Civ.
Prac. & Rem. Code Ann. § 74.301 (Vernon 2005) (prescribing certain limits on
damages recoverable in health-care liability suits); Tex. Fin. Code Ann. § 304.102
(Vernon 2006) (“A judgment in a wrongful death, personal injury, or property
damage case earns prejudgment interest.”).  In fact, Villarreal maintained he
was entitled to, and indeed was awarded, pre-judgment interest although such
award caused an ultimate recovery greater than the “verdict.”  Accordingly,
Rodriguez’s agreement that a verdict between $100,000 and $750,000 “will be the
verdict” did not constitute an agreement that Villarreal is entitled to recover
the amount of that verdict. 

Villarreal also emphasizes the
general concepts that a high-low agreement is considered a complete settlement,
and Texas law favors enforcement of agreements between parties.  See In
re BP Prods. N. Am. Inc., 244 S.W.3d 840, 846 (Tex. 2008).  However,
Rodriguez does not quarrel with these general principles.  Rather, as Rodriguez
correctly suggests, they are inapplicable here because the high-low agreement
was not triggered, and there was no settlement agreement relative to a verdict
between the limits of the high-low agreement.  Instead, relative to any such verdict,
the parties effectively recited that they would remain in the same positions
they would have occupied if there had been no Rule 11 agreement.  

Additionally, Villarreal raises two
estoppel arguments.  First, he cites the doctrine of estoppel by election,
which has been recognized as the principle that a person will not be permitted
to accept the beneficial part of a transaction and repudiate the
disadvantageous part.  See San Antonio Sav. Ass’n v. Palmer, 780
S.W.2d 803, 809 (Tex. App.—San Antonio  1989, writ denied).  Villarreal
suggests that this doctrine precludes Rodriguez from accepting the benefit of a
high-low agreement, which limited his exposure if the verdict exceeded
$750,000, but repudiating a purportedly concomitant agreement to pay the amount
of a verdict between $100,000 and $750,000.  However, the disadvantageous part
of the high-low agreement to Rodriguez was the requirement that he pay $100,000
even if the verdict were less than this amount.  Again, because Rodriguez made
no agreement to pay a verdict between the limits of the high-low agreement, he
does not seek to repudiate a disadvantageous portion of the agreement by
requesting application of the exemplary-damages cap.

Next, Villarreal asserts the
principle of quasi-estoppel, which precludes a party from asserting, to
another’s disadvantage, a right inconsistent with a position previously taken. 
Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 864 (Tex. 2000).   The doctrine applies when it
would be unconscionable to allow a person to maintain a position inconsistent
with one to which he acquiesced or from which he accepted a benefit.  Id.  However,
because Rodriguez never agreed to pay the amount of any verdict between
$100,000 and $750,000, he does not take an inconsistent position by insisting
on application of the exemplary-damages cap before rendition of judgment on
such a verdict.

Finally, Villarreal posits that
Rodrigues waived application of the exemplary-damages cap by failing to
expressly reserve this right when making the Rule 11 agreement.  Villarreal
relies on ASI Technologies, a products-liability case, in which the
defendant seller and the defendant manufacturer entered into a high-low
agreement with the plaintiff, specifying minimum and maximum recoveries.  75
S.W.3d at 546–47.  The defendants then entered into a separate agreement
whereby they apportioned between themselves the amount each would pay under the
high-low agreement with the plaintiff.  Id. at 547.  The jury returned a
verdict that exceeded the maximum limit of the high-low agreement, thus
limiting the plaintiff’s recovery to that amount.  Id.  The jury also found
the manufacturer was liable to the plaintiff but found no liability on the part
of the seller.  Id.  The seller sought statutory indemnity from the
manufacturer pursuant to section 82.002 of the Texas Civil Practice and
Remedies Code for the amount the seller paid pursuant to the high-low
agreement, plus its attorney’s fees, court costs, and pre-judgment interest.  Id.
at 547–48; see Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a), (b)
(Vernon 2005) (providing, in general, that manufacturer shall indemnify and
hold harmless seller against loss arising out of a products-liability action,
except for any loss caused by the seller’s conduct and defining “loss”
to include court costs and other reasonable expenses, reasonable attorney fees,
and any reasonable damages). 

On appeal, the court held that,
although the verdict-sharing agreement was silent with respect to statutory
indemnity under section 82.002, the seller intentionally waived such a right because
enforcing the statute would render the agreement meaningless.  ASI Techs.,
75 S.W.3d at 549.  The court also noted that the seller could have easily
included a provision in the verdict-sharing agreement whereby it reserved its
right to statutory indemnity if it had so chosen.  Id.

ASI Technologies is distinguishable from the present
case because its defendants agreed to each pay a certain amount of the
plaintiff’s recovery; thus, the statutory indemnity sought by the seller would
have directly altered their agreement by effectively causing the manufacturer
to pay the entire recovery.  See id. at 547–49.  Once again, in the
present case, the parties did not enter into an agreement that Rodriguez would pay
a verdict which fell between the limits of the high-low agreement.  Therefore, application
of the exemplary-damages cap to such a verdict would not render meaningless any
agreement of the parties.  Consequently, Rodriguez did not waive his right to
request application of the exemplary-damages cap by entering into the Rule 11
agreement.  

Further, because the parties made no
settlement agreement relative to such a verdict, Rodriguez was not required to reserve
his right to later request application of any legal concepts ordinarily
applicable to rendering judgment on a verdict.  Rodriguez had already pleaded
for application of the exemplary-damages cap and then reiterated his request after
the jury returned the verdict.  

In sum, the trial court
misinterpreted the Rule 11 agreement by deciding it included a settlement
agreement for payment of the amount of any verdict between $100,000 and
$750,000.  Accordingly, the trial court erred by refusing to apply the
exemplary-damages cap when rendering judgment on the verdict, as requested in
Rodriguez’s motion to enter judgment. 

B.        Right to Appeal

However, our inquiry does not end
here because Villarreal contends that Rodriguez waived his right to pursue this
appeal.  Villarreal emphasizes the general principle that the right to
appellate review may be waived by agreement.  See In re Long, 946
S.W.2d 97, 99 (Tex. App.—Texarkana 1997, no writ) (citing Johnson v. Halley, 8 Tex. Civ. App. 137,
27 S.W. 750 (1894, writ ref’d)).  Again, Rodriguez does not disagree with this general
concept.  However, as he suggests, we must determine the scope of the waiver.  

Although the parties stated, “[w]e
agree each party waives right to appeal,” it is unclear whether they waived the
right to appeal only a verdict subject to the high-low agreement or any
verdict.  Arguably, the waiver applied to only a verdict subject to the
high-low agreement because the parties made clear they were making only a high-low
agreement.  Nevertheless, even if the waiver also applied to a verdict between
the limits of the high-low agreement, the parties waived, at most, the right to
appeal the “verdict” and not the right to appeal a judgment improperly rendered
after the verdict.  

Waiver is “an intentional
relinquishment of a known right or intentional conduct inconsistent with
claiming that right.”  Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.
2003) (per curiam).  In determining if a waiver has in fact occurred, the court
must examine the acts, words, or conduct of the parties, and it must be “unequivocally
manifested” that it is the intent of the party to no longer assert the right.  Dep’t
of Protective and Regulatory Servcs. v. Schutz, 101 S.W.3d 512, 516 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (applying this rule when determining
whether party waived right to appeal).  In the present case, the entire
agreement of the parties, in which waiver of the “right to appeal” was contained,
concerned the consequences of a “verdict.”  See Forbau v. Aetna Life
Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994) (recognizing that court must
read all parts of a contract together to ascertain the parties’ agreement, and “[n]o
one phrase, sentence, or section [of a contract] should be isolated from its
setting and considered apart from the other provisions.”).  The
parties did not manifest an intent to relinquish the right to appeal the
judgment in all circumstances.

We construe waiver of the right to
appeal the verdict as relinquishing the right to raise issues which might
vitiate the verdict such as challenges to sufficiency of the evidence to
support the verdict, evidentiary rulings, or jury-charge errors.  However, as
Rodriguez asserts, construing the waiver as applying to any judgment rendered
in this case could lead to an absurd result.  See Lane v. Travelers Indem. Co., 391 S.W.2d 399, 402 (Tex. 1965) (refusing
to construe contract in a manner that would produce absurd result); Pavecon,
Inc. v. R-Com, Inc., 159 S.W.3d 219, 222 (Tex. App.—Fort
Worth 2005, no pet.) (recognizing that, when possible, court will
avoid a construction of contract which would lead to absurd result).  For
example, under Villarreal’s interpretation, the parties would have no recourse
if the trial court rendered judgment for an arbitrary sum that was completely
unrelated to the verdict or if the verdict had been subject to the high-low
agreement, but the trial court rendered a judgment which failed to comport with
the minimum or maximum recoveries.  We recognize these scenarios were unlikely,
but we cite them as examples of the reason that waiver of the right to appeal the
verdict cannot translate to waiver of the right to appeal improper rendition of
judgment on the verdict.

We note that a federal court has
implicitly reached the same conclusion with respect to a similar waiver
provision.  In Vargo v. Mangus, 94 Fed. App’x 941, 942 (3rd Cir. 2004),
the parties entered into a high-low agreement.  Unlike the present case, the
parties explicitly agreed that a verdict between the limits of the high-low agreement
“will be the amount paid.”  See id.  After the jury returned a
verdict between the limits of the agreement, the trial court rendered judgment
for that amount and also granted the plaintiff’s request for additional “delay
damages.”  Id.  The court of appeals held that delay damages were
improper because the parties’ agreement constituted a settlement for the amount
of the verdict only, and the plaintiffs failed to reserve the right to seek
delay damages.  Id. at 943.  Notably, like the present case, the
agreement also contained a waiver of the right to appeal.  Id. at 942.  Although
the court did not discuss any issues regarding the right to appeal, it
expressly noted that the defendants were appealing the award of delay damages
and not the jury’s verdict.  Id. at 942–43 & n.1.  Consequently, because
the court considered the merits of the appeal, it obviously believed the waiver
did not apply to appeal of the trial court’s improper rendition of judgment on
the verdict in violation of the parties’ agreement, as opposed to an appeal of
the verdict itself.  See id.

Villarreal primarily relies on In
re Long, in which the court dismissed an appeal based on a waiver provision
in the parties’ settlement agreement.  946 S.W.2d at 100.  In re Long
is not persuasive here because the provision in that case was much more
specific than the language at issue in the present case.  See id. at
98.  The In re Long parties agreed to waive all rights to appeal from
“any existing order,” which included the order of turnover from which the
appeal was taken.  Id.  In contrast, the parties in the present case did
not waive their right to appeal from “any judgment.”  Accordingly, we conclude
that Rodriguez did not waive his right to appeal the trial court’s failure to
apply the statutory exemplary-damages cap when rendering judgment on the jury’s
verdict.

In sum, we sustain Rodriguez’s first
issue, and we need not consider his second issue.  We modify the judgment to
reduce the award of exemplary damages from $550,000 to $220,218 and affirm the
judgment as modified.  We deny Villarreal’s motion to dismiss and for
sanctions.

 

 








                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Sullivan.

 









[1]
We recognize Villarreal’s attorney did not expressly state that he agreed with
each recitation by Rodriguez’s counsel, and the trial court’s questions
regarding the announcement were not each answered by both counsel. 
Nonetheless, the parties do not dispute the entire announcement constituted
their Rule 11 agreement.  See Tex. R. Civ. P.  11 (“Unless otherwise
provided in these rules, no agreement between attorneys or parties touching any
suit pending will be enforced unless it be in writing, signed and filed with
the papers as part of the record, or unless it be made in open court and
entered of record.”).  Rather, as we will discuss, the dispute involves
interpretation of the agreement.